Marshall E. Livingston, J.
This nonjury action was tried before me on June 15 and 16, 1976.
Plaintiff was a licensed life insurance salesman for defendant from August 1, 1958 to March 18, 1965, when he signed a letter of resignation. During the period from January 1, 1963 to March 18, 1965, plaintiff was the manager of defendant’s Rochester No. 51 agency.
Plaintiff in this action seeks renewal commissions for a period of years after his resignation on March 18, 1965 on policies written by him prior to his resignation.
At the outset a brief description of the contract provisions of plaintiffs contract relating to renewal provisions should be understood so far as they pertain to this action.
The special agent’s agreement relating to commissions on life policies sold, which are involved in this lawsuit, provided that the agent was entitled to 55% of the first-year premium and 5% of each annual renewal premium paid by the insured for not to exceed nine years or as long as the policy was in force, if less than that period of time. The commission schedule was known as "55 and 9/5’s”. For example, assuming an annual premium of $100 per year, the first-year commission would be $55 and for the next nine years, or for so many of them that the annual premium on the policy was paid, the commission would be $5 per year. Thus the agent over a 10-year period, if the policy was current, would receive $100 in commissions.
It was stipulated between the parties that the renewal premiums on policies written before the plaintiffs resignation in March, 1965 would have amounted to $14,000. From this amount, it was also agreed, the defendant paid out $4,900 to the bonding company and credited policyholders’ premium accounts to make them current. It further appears that the defendant also paid from renewals the balance due to Provident * * * Bank & Trust Company on a note theretofore given by plaintiff to it, wherein plaintiff had assigned renewal commissions on November 1, 1962.
The parties further stipulated that if the plaintiff is entitled to recover, the amount would be $14,000 less $4,900 or $9,100 plus interest.
There is no doubt that the plaintiff violated his fiduciary *972 capacity as an agent, as set forth in section 125 of the New York State Insurance Law. Exhibit No. 13 is a stipulation entered into between plaintiff and the New York State Department of Insurance on March 12, 1970, which admits such violations. Further, the plaintiffs explanations of these "offensive practices”, as they were characterized by his attorney, were completely refuted by Messrs. Parish, Hirschland and Hoeffler, who testified concerning their transactions with the plaintiff.
Paragraph (c) of article 16 of the special agent’s agreement dated January 1, 1964 between the plaintiff and defendant states: "This Agreement may, at the option of the Company, be deemed and considered by the Company as forthwith terminated without notice to the Special Agent, if the Special Agent should misappropriate or withhold funds or subject the Company to liability by violating any of the terms or conditions of this Agreement. After such termination no further commissions shall be paid to the Special Agent.”
I find that the plaintiff misappropriated funds and forfeited his right to be paid renewal commissions after March 18, 1965, when he resigned.
The company apparently first had knowledge of the plaintiffs misappropriations on March 10, 1965, when it received a letter from Mr. Parish, a certified public accountant. Suffice it to say that the letter was promptly brought to the attention of Mr. Weller, the defendant’s senior vice president and general counsel, by a Mr. Thompson, an internal auditor for the company, who is now deceased.
At this point it should be mentioned the plaintiff testified that subsequent to his termination with the company, Mr. Thompson told him that after his indebtednesses to the bank and the bonding company had been paid and the policyholders were made whole, the balance of plaintiffs renewal commissions would be paid to him. The undisputed proof was, assuming this to be true, Mr. Thompson had no authority whatsoever to thus bind the company.
Returning to the events of March, 1965, Mr. Weller talked to the plaintiff on the telephone about the situation, and he testified that he decided to terminate the plaintiff for a violation of paragraph (c) of article 16 of the special agent’s agreement relating to misappropriation of funds.
Thereafter Mr. Thompson and a Mr. Kieffner met the plaintiff in Rochester with a letter of resignation previously *973 prepared by the defendant. Mr. Weller said he told Messrs. Thompson and Kieffner, "If he doesn’t resign, then fire him”. The company then audited the plaintiff’s agency, and the results are set forth in Exhibit No. 10 (Mr. Weller’s letter to the New York State Insurance Department). Exhibit No. 13 was the result of the Insurance Department’s investigation into these matters.
Plaintiff claims that because he "resigned” he is entitled to renewal commissions after such resignation under his agency contract. This would have been true, provided paragraph (c) of article 16 of the special agent’s agreement was not involved. Here, however, the overwhelming evidence spells out misappropriation and a clear violation of paragraph (c) of article 16 of said agreement.
The fact that the defendant thereafter chose to credit renewal commissions which would normally be due to plaintiff (were not a violation of paragraph (c) of article 16 involved) to the payment of losses the defendant incurred and to a creditor of the plaintiff under an assignment by him does not entitle the plaintiff to assert that the defendant thereby waived its rights. The last sentence of paragraph (c) of article 16 specifically states: "After such termination no further commissions shall be paid to the Special Agent”.
Plaintiff contends that defendant continued to forward Internal Revenue Service 1099 forms to him showing as income the renewal commissions which were used to pay the Provident * * * Bank & Trust Company and to reimburse or pay back the losses sustained by his misappropriation. I do not see how this is a waiver by the defendant of its rights. The testimony was that the defendant was required by Internal Revenue Service regulations to report those renewals which actually paid off plaintiff’s debts and thus were in fact income to him.
True it is that the plaintiff claims it was not until 1968 that he first knew from Mr. Weller’s letter (Exhibit No. 12) that his agreement was canceled by reason of the violation of paragraph (c) of article 16 of the special agent’s agreement. However, his claim that he paid income tax on renewal "credits” is hard to understand. Most of us are on a cash basis, and we do not pay taxes on money not received as income.
Plaintiff urges that the case of Borie v Smither (8 So 2d 148 [La]) is dispositive of the problem arising in this case. However, there the agent’s contract was deemed to have been *974 terminated by the defendant general agent at his option, and thus the plaintiff was entitled to the renewal commissions. The agent’s contract there likewise provided that any misappropriation of funds would work an immediate termination of the contract and a forfeiture of rights to renewal commissions. The court held, however, that despite the fact that it found there had been no misappropriation of funds by the agent, the defendant terminated the agreement and thus was liable for renewal commissions. The defendant did not raise the question of "misappropriation” until some three years after the matter arose. It further appears that almost three years after the termination of the plaintiff’s contract, the "defendant recognized his obligation and indebtednéss to plaintiff for commissions and renewals, as provided for by the contract, and, in fact, paid and credited them to plaintiff’s account” (Borie v Smither, 8 So 2d 148, 154, supra).
In other words, defendant elected a remedy to terminate under the contract, and was, therefore, liable for renewal commissions. The defendant could not later shift to another remedy by claiming forfeiture when he deemed it to be more advantageous to do so.
In this case, however, from the very beginning, the defendant, in my judgment, clearly treated this case as a termination by reason of misappropriation by the plaintiff. The subsequent payment to the bank by reason of plaintiff’s assignment, the payment to the bonding company, and the payments to policyholders were not waivers of its rights under paragraph (c) of article 16 of the special agent’s agreement. There is no conflicting testimony as to whether plaintiff’s acts were improper.
In American Law Reports (Ann 36 ALR3d, pp 1012, 1014), the case of Sterling v Metropolitan Life Ins. Co. (17 NY St Rep 694, affd 130 NY 632) is digested. The digest states that the case "recognized that the agent in question could have been deprived of commissions on renewal premiums if his agency was justifiably terminated for his failure to remit premiums, although a verdict in his favor was sustained on conñicting evidence as to whether his acts were proper” (36 ALR3d, supra, p 1012, emphasis added).
Judgment may be entered in favor of the defendant dismissing the complaint.